FILED
2021 Sep-13  PM 03:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LAQUEST HALL,                         )
                                                      )
        Plaintiff,                  )
                                                      )
v.                                    )     Case No.:  2:19-cv-00323-JHE
                                                      )
UNITED STATES OF AMERICA,             )
                                                      )
        Defendant.                  )

### MEMORANDUM OPINION[1]

Through his first amended complaint, Plaintiff LaQuest Hall ("Hall") brings this action under the Federal Tort Claims Act ("FTCA") against the United States of America for injuries he sustained while working on behalf of the United States Postal Service ("USPS").  (Doc. 31).  The United States has moved to dismiss one count of Hall's complaint under Fed. R. Civ. P. 12(b)(6) and for summary judgment on all of Hall's claims.  (Doc. 39).  Hall opposes that motion, (doc. 43), and the United States has filed a reply in support, (doc. 45).  In its reply, the United States argues in part that its Rule 12(b)(6) motion should be considered as a motion for judgment on the pleadings under Rule 12(c).  (*Id.* at 3-5).  For the reasons discussed more fully below, the motion for judgment on the pleadings is **GRANTED**, and the motion for summary judgment is **DENIED AS MOOT IN PART** and **GRANTED IN PART.**

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 16).

# I. Standard of Review

## A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam)

2

(citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

### B. Rule 12(c) Standard[2]

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).  The court considers only the pleadings—the complaint, answer, and any exhibits thereto. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

---

[2] The parties disagree about whether this motion is timely.  Hall argues it is too late to file a motion under Fed. R. Civ. P. 12(b)(6)—or any motion asserting that Hall's complaint fails to state a claim for relief—because the United States answered the amended complaint.  (Doc. 43 at 5-7).  The United States responds with authority that, notwithstanding its answer, a motion challenging the sufficiency of the complaint is permissible now through a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Doc. 45 at 3-5).  The United States' argument is more persuasive.  Although the United States originally styled its motion as a Rule 12(b)(6) motion, "the objection that a complaint 'fail[s] to state a claim upon which relief can be granted' . . . endures up to, but not beyond, trial on the merits . . . ."  *Arbaugh v. Y&H Corp*., 546 U.S. 500, 506-07 (2006).  Under Fed. R. Civ. P. 12(h)(2), a party does not waive the right to assert that a complaint fails to state a claim by failing to file a motion under Rule 12(b)(6); instead, that party may make such a challenge through a motion under Rule 12(c).  FED. R. CIV. P. 12(h)(2).  The only temporal limitation on a Rule 12(c) motion once the pleadings are closed is that it be made "early enough not to delay trial."  FED. R. CIV. P. 12(c).  Since that requirement is met here, and since the legal standard for a motion under Rule 12(b)(6) is the same as the standard for a motion under Rule 12(c), *see Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002), the undersigned construes the United States' motion as a motion under Rule 12(c), regardless of its initial characterization.

Substantively, the court applies the same principles to a motion to dismiss under Rule 12(c) as it would to a motion to dismiss under Rule 12(b)(6). *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("Whether the court examine[s] [the complaint] under Rule 12(b)(6) or Rule 12(c), the question [is] the same: whether [it] state[s] a claim for relief."). Rule 12(b)(6) permits dismissal when a complaint is deficient under Rule 8 and fails to state a claim upon which relief can be granted. Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A court assessing whether a party is entitled to judgment on the pleadings accepts as true all material facts alleged in the non-moving party's pleading and views those facts in the light most favorable to the non-moving party. *See Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). This means that, on a "defendant's motion for judgment on the pleadings, where no matters outside the pleadings are presented, the fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).[3] However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Summary Judgment Facts

Hall worked as a driver for Postal Fleet Services, a company that contracts with the USPS. (Deposition of LaQuest James Hall (doc. 41-1, "Hall Depo.") at 4-5 (16:4, 18:21-25); Affidavit of LaQuest Hall (doc. 44 at 3-5, "Hall Aff.") at ¶ 2).[4]  In this capacity, Hall picked up mail from and delivered mail to postal facilities.  (Deposition of Brenda Lee, (doc. 44 at 27-32, ("Lee Depo.") at 29 (5:8-10)).

---

[3] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[4] Because Hall's evidentiary submission was submitted as multiple exhibits within a single document, references to those exhibits are made to the page number on which they appear in doc. 44.

On May 21, 2017, Hall arrived at the Springville, Alabama Post Office.[5]  (Hall Depo. at 4 (13:8-13)).  Because it was a Sunday, no USPS employees were present.  (*Id.*).  Although the Springville Post Office sometimes made a pallet jack available for drivers in the post office vestibule, Hall noticed there was no pallet jack in the vestibule on that date.  (Hall Depo. at 10 (38:8-12); Hall Aff. at ¶ 2; Deposition of Joanne Jemison, (doc. 44 at 21-26, "Jemison Depo.") at 23-24 (4:19-7:22)).

Hall loaded "everything [he] could take off without using the pallet jack."  (Hall Depo. at 10 (38:14-15)).  Then Hall used two cargo straps to lift crated boxes of magazines, which weighed over 70 pounds.  (*Id.* (38:15-39:1, 40:15-16)).  Hall injured his back during this process.[6]  (*Id.* (39:1-2); Hall Aff. at ¶ 3).[7]

Asked about this process, Hall testified:

Q:  The only real safe method of doing that would be with a pallet jack, wouldn't it?

A:  From 2011 to 2019, if you don't have a pallet jack, you use straps to pull it off.

Q:  But you realize there was danger in doing that, didn't you?

---

[5] The Springville Post Office facility is owned not by the United States, but by Springville Joint Venture, LLC.  (Doc. 44 at 40-42).

[6] In its reply, the United States argues that "[t]he medical causation evidence is in conflict" due to a prior incident in which Hall also claimed a back injury.  (Doc. 45 at 2) (citing Hall Depo. at 22-26; doc. 41-1 at 68-81).  For summary judgment purposes, any such conflict is resolved in Hall's favor.

[7] The United States briefly contends portions of Hall's affidavit, including Paragraph 3, should be stricken because the factual matters in the affidavit were not disclosed to it in discovery responses.  (Doc. 45 at 2-3).   The United States does not develop this argument beyond assertion and a contention it should be disallowed pursuant to Fed. R. Civ. P. 26(g).  It does not identify the document in which Hall should have disclosed these matters, provide a copy of that document for review, or otherwise explain how Hall violated Rule 26(g).  Nor, beyond simply referencing the Rule, does it provide any authority in support.  The undersigned declines to strike the affidavit based on this cursory argument.

A:  I have a job to do.

Q:  I know that.

A:  The job consist[s] of getting that mail off that truck.  If not I don't have a job; therefore, I can't take care of my family.

Q:  But, I mean, you understood that you could get hurt doing that without a pallet jack.  I mean, if they didn't have one.

A:  Well, sir, I complained for a year to every power that be.

Q:  I understand that.  But I mean—

A:  Me being the lowest on the totem pole, I had to do what I had to do to get it off the truck. That's what we were instructed to do since 2011. If you don't have a pallet truck, you use a strap to pull it off.

Q:  That's what your employers told you to do?

A:  Every employer I worked for—even on the post office if there is no pallet jack, they use those—another method to pull it because they especially during high mail call, Christmastime, the post office don't have enough pallet jacks.

(Hall Depo. at 10-11 (40:21-41:24)).

Joanne Jemison, the current Springville Postmaster, testified that, at the time of the incident, there was no set procedure at the Springville Post Office for unloading mail or making a pallet jack available. (Jemison Depo. at 24 (8:9-9:8)).  Brenda Lee, an employee at the Springville Post Office, testified to essentially the same thing: truck drivers did not have access to the area with the pallet jacks, and it would be the responsibility of "whatever clerk worked on Saturday" to make sure that a pallet jack was left out in the vestibule.  (Lee Depo. at 3 (7:4-8-15)).  Linda Snow, another Postal Fleet Services worker, provided an affidavit stating she had also encountered issues with the USPS failing to leave pallet jacks out at the Springville Post Office.  (Affidavit of Linda

Snow, (doc. 44 at 33-35, "Snow Aff.") at 34).[8]  Lolita Farris, a former Springville Post Office worker, testified that Snow had informed her even after Hall's injury that sometimes a pallet jack would not be left out.  (Deposition of Lolita Farris, (doc. 44 at 43-50, "Farris Depo.") at 48 (16:2-17:23)).

The USPS never provided Hall with safety equipment or training regarding the process of unloading mail from a truck, nor did it have a safety sign posted at the loading ramp.  (Hall Aff. at ¶¶ 4-5).  However, Hall testified that he does not contend that any USPS workers willingly tried to hurt or injure him.  (Hall Depo. at 3 (11:22-25)).

### III. Analysis

Hall's amended complaint, the operative pleading in this case, contains three counts: Count One, labeled "Negligence/Respondeat Superior," (doc. 31 at 1-2); Count Two, labeled "Breach of Duty, Negligence and Ordinary Care," (*id.* at 2-3); and Count Three, labeled "Willfulness," (*id.* at 3).  As construed, the United States has moved for judgment on the pleadings as to Count Three, and for summary judgment on all three claims.  (Doc. 40).

"Under the FTCA, the United States is liable for tortious conduct 'in the same manner and to the same extent as a private individual under like circumstances' after applying the applicable law in the same jurisdiction." *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008) (quoting 28 U.S.C. § 2674).  As such, the undersigned applies Alabama law to Hall's claims.

---

[8] The United States argues this affidavit "omits [Snow's] deposition testimony," an excerpt of which it says demonstrates that Hall was not required to use a strap.  (Doc. 45 at 3).  Neither side provided Snow's deposition as part of its evidentiary submission, so the deposition is not part of the summary judgment record.

### A. Negligence Claims (Counts One and Two)

Under Alabama law, a plaintiff alleging negligence must show "(1) a duty to a foreseeable plaintiff; (2) breach of that duty; (3) proximate causation; and (4) damage or injury." *Standifer v. Best Buy Stores, L.P.*, 364 F. Supp. 3d 1286, 1303 (N.D. Ala. 2019) (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)).  In his first amended complaint, Hall contends that "it became, and was the duty, of the USPS to exercise due care and caution in making a pallet jack available to avoid injury," that "Defendant's employees and Post Master were negligent in not providing . . . pallet jacks," and that as "a direct and proximate result of [this], plaintiff suffered a back injury . . . ." (Doc. 31 at 2, ¶¶ 9-11).  Hall's second count appears to overlap with this, simply stating the United States' duty was "to exercise reasonable care not to injure, or cause injury to" him.  (*Id.*, ¶ 12).

The United States argues Hall's negligence claims are barred by Alabama's Workers Compensation Act ("AWCA"), Ala. Code § 25-5-1 *et seq.*.  (Doc. 40 at 5-11).  The AWCA sets limits on a worker's ability to sue government agencies for workplace injuries.  Specifically, Alabama Code § 25-5-11 states in relevant part:

> If the injury or death for which [workers'] compensation is payable . . . was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter.  *If a party, other than the employer . . . is a governmental agency providing occupational safety and health services . . . the injured employee, or his or her dependents in the case of death, may bring an action . . . only for willful conduct which results in or proximately causes the injury or death*.

ALA. CODE § 25-5-11(a) (emphasis added).  The statute defines "willful conduct" (as applicable to the facts of this case) as an act undertaken with "[a] purpose or intent or design to injure another," or when a person "with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury . . . ."  ALA. CODE § 25-5-11(c)(1).  And Alabama Code § 25-5-53 further provides:

> Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment. In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to . . . a governmental agency providing occupational safety and health services . . . .

ALA. CODE § 25-5-53.

The United States relies on two cases, both from this district, to support its immunity from suit for conduct other than willful conduct.  The first of these is *Kirby v. Tennessee Valley Authority*, 877 F. Supp. 578 (N.D. Ala. 1994).  In *Kirby*, the plaintiff was employed by a contractor performing work for TVA at a nuclear power plant.  *Id.* at 579.  While working there, he fell and was injured.  *Id.*  He sued TVA, asserting various theories of negligence and/or wantonness.  *Id.* at 579-587.  TVA moved to dismiss.  Relying on the provisions cited above, the court concluded TVA was immune from liability for anything other than willful conduct.  *Id.* at 589.  Because the complaint contained no allegations of willfulness, the court granted the motion to dismiss.  *Id.*

The second case is *Perry v. United States*, No. 1:11-CV-2747-VEH, 2012 WL 4340057 (N.D. Ala. Sept. 18, 2012).  In *Perry*, the plaintiff was employed by a contractor and worked as a warehouse specialist lead at the Anniston Army Depot.  *Id.* at *1.  She was struck by a fire door and injured.  *Id.*  She sued the United States, contending it had negligently failed to keep the

10

premises safe and negligently failed to maintain the premises where the door had fallen.  *Id.*  The

United States moved for summary judgment.  The court found that the allegations of negligence,

both of which stemmed from the plaintiff's "injury as a worker caused by certain unsafe conditions

existing within a federally owned and operated facility," were barred by §§ 25-5-11 and 25-5-53.

*Id.* at *6.[9]

      If *Kirby* and *Perry*—and, necessarily, §§ 25-5-11 and 25-5-53—apply, Hall's negligence

claims are barred.  Hall's first rebuttal to this is that the cases are distinguishable because both

occurred on land owned by the federal government.  (Doc. 43 at 8-10).  Hall points to a reference

in *Kirby* to 40 U.S.C. § 290 (since recodified at 40 U.S.C. § 3172), in which the court noted that

state workers' compensation laws can apply to the federal government.  (Doc. 43 at 8-9) (citing

*Kirby*, 877 F. Supp. at 588).  That statute, titled "Extension of state workers' compensation laws

to buildings, works, and property of the Federal Government," provides, in relevant part:

> Authorization of Extension - The state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government, in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land, premises, projects, buildings, constructions, improvements, or property are located.

---

[9] The bulk of the court's analysis in *Perry* concerned whether there was a distinction between negligently failing to provide safe working conditions (to which the AWCA unquestionably applies) and negligently maintaining premises (a more tenuous reach for the AWCA).  That distinction is immaterial to this case, as there is no negligent maintenance claim.

40 U.S.C. § 3172(a).  Hall argues that, because § 3172 only applies to "all land and premises in the State which the Federal Government owns," the United States was required—and failed—to show it owned the Springville Post Office.

Hall is correct that the record evidence shows § 3172 does not apply to the Springville Post Office.  However, that is a separate question from whether the AWCA applies within the Springville Post Office premises.  At the outset, it makes little sense to conclude that the AWCA reaches into property exclusively under the control *and* ownership of the federal government but is not applicable at all to property leased by the federal government but under Alabama's jurisdiction.  And, in fact, the text of § 3172 provides no support for this conclusion.  Instead, as the United States points out in its reply, (doc. 45 at 5), § 3172 simply allows state workers' compensation laws to apply within federal enclaves, where state regulatory authority would otherwise cease, *see United States v. State Tax Comm'n,* 412 U.S. 363, 370, 378 (1973).  The statute distinguishes between "all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government," in which state law would not apply without some concession by the federal government, and land that is "under the exclusive jurisdiction of the State," in which no such concession is required for state law to operate.  In other words, § 3172 is an expansion of state jurisdiction, not a limitation on it.  In light of this, it is easy to see why *Kirby* and *Perry* cited the statute: both involved land owned by the federal government—a TVA nuclear facility in *Kirby*, and an army depot in *Perry*—so it was necessary in both instances to provide authority for why state workers' compensation laws were implicated at all.  Neither case supports that the AWCA (which, after all, is agnostic about which

12

"governmental agenc[ies]" its immunity covers) does not apply to the federal government unless a workplace injury occurs in an area covered by § 3172.

Hall also argues the United States is not covered by the AWCA because it did not provide "occupational safety and health services" to him.  (Doc. 43 at 11-17).  Hall points to his affidavit, which states that the USPS did not provide him with "any safety or equipment training regarding the process of unloading mail from a truck to the loading ramp or the use of straps and pallet jacks."  (Doc. 43 at 13) (citing Hall Aff. at ¶ 4).  Hall also notes Jemison's testimony that there were no specific safety procedures in place at the time of his injury, (*id.* at 13-14) (citing Jemison Depo. at 24 (8:9-9:6)), and Farris's testimony that Snow had complained about the absence of pallet jacks, (*id.* at 14-15) (citing Farris Depo. at 48 (16:2-17:23)).  Hall asserts that "[a] broader reading of [his] testimony shows that the pallet jacks were there more as a matter of convenience than safety."  (*Id.* at 16).  Finally, Hall points to a question posed by the United States' at Hall's deposition regarding the contract between Postal Fleet Services and the USPS, in which counsel stated "The supplier, that's Postal Fleet Services, must take proper safety and health precautions . . . ."  (*Id.* at 16-17) (quoting Hall Depo. at 52:15-53:5).

Unhelpfully, the AWCA does not attempt to define what constitutes "occupational safety and health services."  *See* ALA. CODE § 25-5-1.  Neither does the United States, which assumes in its motion that Hall alleges it provided such services because his allegations concern its failure "to provide a safe workplace by not having a pallet jack available," (*see* doc. 40 at 11), and asks in its reply that the court take judicial notice of safety-related portions of the USPS Employee and Labor Relations Manual, (*see* doc. 45 at 6).  The first of these is discussed further below, but the second is a nonstarter; regardless of whether the USPS provided "occupational safety and health services" to its own employees, it does not necessarily follow that it provided such services to Hall.  *Cf.*

13

*Kirby*, 877 F. Supp. at 589 n.2 ("[w]hile TVA was admittedly not created by Congress for the principal purpose of providing occupational safety and health services, there is indeed no reason why it cannot provide occupational safety and health services not only to its own employees *but also to the employees of independent contractors* engaged in performing contract work for TVA on TVA owned property.") (emphasis added).  For his part, Hall relies on language in *Kirby* characterizing the "occupational safety and health services" TVA provided to contractors as "making safety inspections, providing safety training, providing safety equipment, providing safety procedures and warning of safety hazards." (Doc. 43 at 13) (citing *Kirby*, 877 F. Supp. at 587).  But *Kirby* does not purport to limit what types of services fall under this umbrella so much as characterize the duties the plaintiff alleged TVA owed to him.  In other words, *Kirby* stands for the proposition that whether a defendant provides "occupational safety and health services" to the plaintiff is defined by the nature of the plaintiff's own claims.

Following *Kirby's* logic, the question boils down to an interpretation of Hall's negligence allegations.  As discussed above, Hall alleges the United States had a duty to provide not just a safe workplace, but to make a particular device available to ensure his safety while working.  This forecloses any argument that, as far as Hall's theory of the case is concerned, the United States is outside the scope of §§ 25-5-11 and 25-5-53.  Regardless of whether the United States denies it was responsible for providing a pallet jack to Hall, *Hall's* argument is that the United States *was* responsible for providing the pallet jack.  If the United States had a duty to provide contractors like Hall with a pallet jack to prevent on-the-job injuries like the one he suffered, Hall is arguing it provided (or ought to have provided) "occupational safety . . . services" to him, and his negligence claims are barred by the AWCA.  If the United States had no such duty—if, in Hall's own words, the pallet jacks "were there more as a matter of convenience than safety," (doc. 43 at

14

16)—Hall cannot premise a negligence claim on the United States' failure to provide him with a pallet jack. Either way, Hall's negligence claims fail, and the United States is entitled to summary judgment on them.[10]

### B. Willfulness Claim (Count Three)

The third count of Hall's amended complaint does allege willful conduct by the United States. The United States attacks this count in three ways. First, the United States argues the amended complaint itself fails to meet the applicable pleading standard. (Doc. 40 at 11-13). Second, within this argument, it points to Hall's testimony that he was not contending that USPS employees "willingly tried to hurt [him]." (*Id.* at 13). Finally, the United States contends Hall's claim is barred by the FTCA's intentional tort exception. (*Id.* at 13-14). Because the first of these supports dismissal of the willfulness claim, the undersigned does not reach the remaining two arguments.

In its entirety, Hall's third count asserts the following:

15. Defendant was under a duty to provide pallet jacks to drivers at their facility.

16. Defendant is guilty of the omission of this duty, and under the knowledge that the resulting conditions could lead to the injury of drivers.

17. As a direct and proximate result of the aforesaid, plaintiff suffered a back injury, past, present, and future extreme emotional and physical distress, past, present, and

---

[10] The United States also argues Hall's claims are barred due to his contributory negligence. Under Alabama law, this would require it to show that Hall (1) had knowledge of the condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care by placing himself in the way of danger. *Brown v. Piggly-Wiggly Stores*, 454 So. 2d 1370 (Ala. 1984) (citing *Hatton v. Chem-Haulers, Inc.*, 393 So. 2d 950 (Ala. 1980)). The undersigned declines to address this argument beyond noting that contributory negligence is ordinarily a jury question, *see Watters v. Bucyrus-Erie Co.*, 537 So. 2d 24 (Ala. 1989), and the United States' contention that the court should base a finding of contributory negligence on an inference adverse to Hall, (*see* doc. 45 at 11), is inconsistent with the summary judgment standard.

> future medical expenses, past, present, and future pain and suffering, past, present and future medical bills, permanent injury, and the potential for additional surgery.

> WHEREFORE, plaintiff prays that this Court will grant judgement against defendant in an amount beyond the jurisdictional minimum of this court, award compensatory damages for said negligent [sic] conduct and grant such other relief as is just and appropriate.

(Doc. 31 at 3). Even importing other factual allegations from other counts in the complaint to support Hall's willfulness claim, this falls far short of Hall's pleading burden. As noted above, Hall must assert willful conduct within the meaning of the AWCA to escape its immunity provisions: i.e., an act undertaken with "[a] purpose or intent or design to injure another," or when a person "with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury . . . ." ALA. CODE § 25-5-11(c)(1). The allegations in Hall's complaint are entirely conclusory, and they do not provide any support for the notion that any USPS employee acted with a "purpose or design to injure" him or, knowing that failing to leave a pallet jack for him could be dangerous, consciously chose to do so "with a design, intent, and purpose of inflicting injury" upon him.

Furthermore, even if Hall's allegations were not conclusory, it is insufficient under both the AWCA and Alabama tort law in general for Hall to allege the United States knew its conduct *could* lead to a driver's injury. That is the type of allegation that would potentially support a wantonness claim. But, as the Alabama Court of Civil Appeals recently discussed, that is not the same as a claim of willfulness:

> Willfulness is not equivalent to wantonness. *Lyons v. Walker Reg'l Med. Ctr.*, 868 So. 2d 1071 (Ala. 2003). That is, proof that one had "'knowledge and consciousness that the injury is likely to result from the act done or from the omission to act,'" *Mazda Motor Corp. v. Hurst*, 261 So. 3d 167, 189 (Ala. 2017) (quoting *Ex parte Dixon Mills Volunteer Fire Dep't, Inc.*, 181 So. 3d 325, 333 (Ala. 2015)), although sufficient to establish wantonness, is not sufficient to establish that one has acted willfully. To be sure, more recent cases have, in discussions of

wantonness, discussed "willful and wanton" or "willful or wanton" conduct as if the two are simply interchangeable terms for the same level of culpability. *See, e.g., Mazda Motor Corp.*, 261 So. 3d at 188-93 (discussing the proof required to support a claim of wantonness); *see also Ex parte Dixon Mills Volunteer Fire Dep't*, 181 So. 3d at 333 (discussing whether the defendant had engaged in "willful or wanton misconduct" under Ala. Code 1975, § 6–5–336(d)(2) ). However, we do not perceive these sometimes confusing statements as an intent to change the long-standing law governing the separate concepts of willfulness and wantonness.

> "An approved definition of wantonness is the conscious failure of one charged with the duty to exercise due care and diligence, to prevent an injury after discovery of peril. Or, under circumstances where one is charged with the knowledge of such peril, and conscious that injury will likely, probably or inevitably result from his actions, or his failure to act, he does not take the proper precautions to prevent injury.
>
> "To constitute 'willful or intentional injury,' there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission. To constitute 'wantonness' the design may be absent if the act is done with knowledge of its probable consequence and with a reckless disregard of those consequences."

*English v. Jacobs*, 263 Ala. 376, 379, 82 So. 2d 542, 544–45 (1955); *see also Porterfield v. Life & Cas. Co. of Tennessee*, 242 Ala. 102, 105, 5 So. 2d 71, 73 (1941). Our supreme court has also discussed the distinction between an averment of "willful and wanton conduct" and an averment of "willful or wanton conduct." *Dickey v. Russell*, 268 Ala. 267, 270, 105 So. 2d 649, 651 (1958). The *Dickey* court explained that to support a claim of "willful and wanton" conduct a plaintiff must present proof of "willfulness or design or purpose," while to support a claim of "willful or wanton" conduct, a plaintiff must present proof of only wantonness. *Dickey*, 268 Ala. at 270, 105 So.2d at 651.

*Brewer v. Atkinson*, 262 So. 3d 663, 670–71 (Ala. Civ. App. 2018).

Hall provides no basis to conclude that the allegations in his complaint meet the standard for willfulness.  Consequently, the United States is due judgment on the pleadings as to Hall's willfulness claim.[11]

### IV. D Conclusion

For the reasons stated above, the United States' motion for judgment on the pleadings is **GRANTED**.  Its motion for summary judgment is **DENIED AS MOOT** as to Hall's willfulness count, and otherwise **GRANTED**.  A separate order will be entered.

DONE this 13th day of September, 2021.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[11] Even if Hall's willfulness claim were well-pleaded, the undersigned has reviewed the record evidence and found no facts that would actually support willfulness by the USPS.  As the United States points out, Hall explicitly disavowed at his deposition (which was taken months after he filed his first amended complaint) any claim that a USPS employee "willingly tried to hurt [him]."  (Doc. 40 at 4) (citing Hall Depo. at 3 (11:22-25)).  Thus, the USPS would be entitled to summary judgment on Hall's willfulness claim in any case.

18